IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| JESSE W. & MARCELLENE M. ROBERTS, ) | |
| ) | CASE NO. BK11-81048-TJM |
| Debtor(s). ) | A11-8069-TJM |
| DAVID & MELISSA BRIGGS, ) | |
| ) | |
| Plaintiffs, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| JESSE W. & MARCELLENE M. ROBERTS, ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the court on the defendant-debtors' motion for summary judgment (Fil. No. 43) and objection by the plaintiffs (Fil. No. 56). Erin M. McCartney represents the debtors, and William J. Bianco represents the plaintiffs. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

This adversary proceeding was filed to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A). The Briggses ("the purchasers") allege they contracted with Roberts Pool & Spa in 2008 to build a swimming pool at the Briggs residence. Despite receiving more than $35,000 in deposits, Roberts Pool & Spa did not commence construction or return the funds. Mr. & Mrs. Roberts filed a Chapter 7 bankruptcy proceeding in April 2011. The purchasers thereafter filed this lawsuit alleging that the debtors obtained the deposit money from them through false representations. The debtors now move for summary judgment, asserting that the debt is dischargeable because the purchasers are unable to prove the elements of § 523(a)(2)(A).

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The following facts are uncontroverted or established by the evidence:

1. Mr. & Mrs. Briggs contacted Roberts Pool & Spa in July 2008 about installing a swimming pool at their residence. They dealt with Mary Greise, a vice-president of the company and the daughter of Mr. & Mrs. Roberts.

2. On July 25, 2008, the purchasers paid an initial deposit of $1,000 to Roberts Pool & Spa for a feasibility study, which was completed. The feasibility study consisted of a visit to the client's home by Ms. Greise, the installation subcontractor, and a landscape architect to determine an appropriate location for and design of the pool.

3. The purchasers entered into a contract on October 3, 2008, with Roberts Pool & Spa for the construction of a swimming pool, with the understanding the pool would be built in the spring of 2009.

4. On October 3, 2008, in accordance with the parties' contract, the purchasers made a down payment of $34,178.35 to Roberts Pool & Spa to order equipment and materials for the project.

5. In the latter part of 2008, Mr. & Mrs. Roberts were attempting to sell the business.

6. On December 12, 2008, Mr. Roberts suffered a stroke, from which he has since recovered.

7. At the same time, Roberts Pool & Spa's lender declined to reopen the business line of credit on which the company depended for operating funds during the winter.

8. In January 2009, Mr. Roberts telephoned Mr. Briggs and informed him that the business was in the process of being sold to Ms. Greise and Travis Jurgensmeier and arrangements were being made with the new owners to fulfill the contract to install the Briggses' pool.

9. After this telephone conversation, Mr. Briggs wrote to Roberts Pool & Spa offering to pay the subcontractors directly in order to facilitate the installation of their pool and avoid any liens filed by unpaid subcontractors, or to take possession of the materials for the pool and any remaining balance of the down payment and have the pool installed by another company. The purchasers received no response to this correspondence.

10. The sale of the company was not completed because of difficulties in obtaining financing. The business closed in January 2009.

11. The purchasers filed a state court lawsuit against the Roberts.

12. The Roberts filed a Chapter 7 bankruptcy petition on April 26, 2011, and listed this debt

as unsecured.

      13.  The purchasers filed this adversary proceeding on July 25, 2011.

      The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010).

      The complaint centers on the purchasers' belief that the debtors' failure to use the down payment specifically to pay for the materials for the Briggses' pool was fraudulent. Mr. Briggs explains the basis for the lawsuit as follows:

> A. The transaction, which I believe the representations were false, were the health of the business that they were going to be able to fulfill a contract, that the use of my dollar — my money was not in accordance with the contract and the intent of the contract as cited to purchase material for my installation, there was no attempt to purchase my material. And when I offered for them to drop ship and to satisfy — to pay their vendors directly instead of having to worry about their financing, there was no — there was no response. So all along, all that together tells me that they had absolutely no intent to satisfy that contract.
> Q. Okay. So —
> A. And they had no ability to return my money.

Dep. of David Briggs, 24:4-17 (Fil. No. 45).

> Evidence gathered throughout this process reflects that Jesse and Marcellene Roberts did in fact use our money to pay off other obligations and I believe that doing so was committing fraud, and therefore should not be expunged from their debts as a result of bankruptcy.

Aff. of David Briggs ¶ 22 (Fil. No. 59).

      To establish that the debtors committed fraud, the creditors must prove that the debtors obtained money or property from them concurrent with the debtors' misrepresentation. Marcusen v. Glen (In re Glen), 639 F.3d 530, 533 (8th Cir. 2011). Mr. Briggs admits he did not consider this to be misrepresentation until late January 2009 when the business closed. Briggs Dep. at 24:18-25:12 (Fil. No. 45). Mr. and Mrs. Briggs rely heavily on the alleged misrepresentation by the debtors

-3-

that their down payment would be used to order the materials for their pool, but the evidence does not reflect that the debtors made any misrepresentation to the Briggses when the down payment was made, or even in January 2009 when Mr. Roberts contacted Mr. Briggs to inform him of the expected sale of the company. The debtors admittedly used the down payment for daily operations. The funds from the purchasers went into the company's checking account and withdrawals were made from that account to pay vendors, employees, and other business expenses. Had a pool been ordered for the Briggs family, it would have been paid for out of that account. However, there is nothing in the contract or in any of the other evidence to support the argument that the specific monies paid by the Briggs would be used to pay the pool supplier. There is absolutely no evidence that the debtors were obligated to earmark or escrow the particular funds from the purchasers for the purchasers' project. The purchasers have presented affidavit and deposition testimony from witnesses who formerly worked for Roberts Pool & Spa attesting to their understanding that a customer's deposit was used to pay for materials for that customer's project. Undoubtedly, a pool manufacturer is likely to expect payment before shipping its product, so Roberts Pool & Spa would have to pay when placing its order. That is not the same as using the exact down payment funds for that customer's pool. Absent persuasive evidence of a customary industry standard to escrow or earmark a customer's funds for that customer's project, there has been no misrepresentation.

The parties initially planned for a fall installation of the purchasers' pool, but the purchasers subsequently decided to have the pool built the following spring. When the contract was signed, construction of the Briggses' pool was scheduled to begin in early spring 2009, more than six months after the down payment was made. However, "[a] promise to perform a future act is an actionable representation only when made with an existing real intention not to perform. The breach of an agreement does not in itself establish that the promisor had no present intention to keep the promise." Little Family Farms Corp. v. Mortensen (In re Mortensen), 415 B.R. 383, 390 (Bankr. S.D. Iowa 2009) (citations omitted). It certainly was a reasonable business decision at the time of making the contract for Roberts Pool & Spa to plan to order the pool materials for delivery near the time they expected to begin installation, rather than storing them over the winter. Presumably, they expected to use cash flow, in the form of funds from future customers, to purchase the materials. That is how their business, and many others, operated.

Late 2008, in retrospect, was a vexing time to be in an industry dependent upon consumers' discretionary spending. Roberts Pool & Spa experienced decreased business due to the national economic downturn, leaving it in precarious financial straits by the end of that year. Nevertheless, the evidence indicates that when Mr. Roberts contacted Mr. Briggs in January 2009, he believed the prospective buyers of the business would obtain financing to complete the purchase and permit them to honor existing contracts such as the one with the Briggses.

Without evidence that the debtors, at the time they entered into the contract, did not intend to fulfill the contract, the purchasers are unable to establish a necessary element of their case. See Levine v. Ward (In re Ward), 425 B.R. 507 (Bankr. E.D. Wis. 2010) (holding that a contractor's use of a down payment for other purposes did not render the debt non-dischargeable under § 523(a)(2)(A) because the contractor had made efforts to perform) and Keene v. Mugford (In re Mugford), 346 B.R. 284 (Bankr. D. Mass. 2006) (holding that the evidence did not support a finding

that a contractor who intended to perform a remodeling project but "was overburdened by other projects and his inability to manage them all" had made a false representation).

While the purchasers are justifiably upset about the disappearance of their down payment, this is no more than a breach of contract. Absent evidence of fraud, debts arising from contract breaches are not excepted from discharge in bankruptcy. Lindau v. Nelson (In re Nelson), 357 B.R. 508, 514 (B.A.P. 8th Cir. 2006); Integrated Practice Mgmt., Inc. v. Olson (In re Olson), 325 B.R. 791, 801 (Bankr. N.D. Iowa 2005). The evidence does not support a finding of fraud, so this debt will not be excepted from discharge.

IT IS ORDERED: The defendant-debtors' motion for summary judgment (Fil. No. 43) is granted. Separate judgment will be entered.

DATED:   July 25, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Erin M. McCartney
    William J. Bianco
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.